## Case No. 16,847.

### VANDEWATER v. The YANKEE BLADE.

[1 McAll. 9.] [1]

Circuit Court, S. D. California.    July Term, 1855.[2]

MARITIME LIENS—JURISDICTION IN REM—CHARTER PARTY—CONSORTSHIP.

1. Maritime liens will not be extended by implication.

2. Where a contract is maritime, if there is no lien annexed to it by law, it cannot be enforced in admiralty by proceedings in rem.

3. An agreement by owners for the future employment of their vessels, resembles more a consortship than a charter-party, and to it no lien is fixed by implication of law.

[Appeal from the district court of the United States for the Southern district of California.]

A libel in rem was exhibited in the court below, claiming damages for the violation of an agreement, entered into at New York, on the 24th day of September, 1853, in the following words: "This agreement, made this twenty-fourth day of September, 1853, at the city of New York, between Edward Mills, as agent for the owners of steamship 'Uncle Sam,' and William H. Brown, as agent for the owners of steamship 'America,' witnesseth, that said Mills and Brown hereby agree with each, as agents for the owners of said ships before named, to run the two ships in connection for one voyage, on terms as follows, viz.: Of all moneys received from passengers, and for freight contracted through and between New York and San Francisco, both ways, the 'Uncle Sam' shall receive seventy-five per cent. and the 'America' shall receive twenty-five per cent.; the money to be received here by said E. Mills, and the share of the 'America' to be paid over to William H. Brown, or his order, before the sailing of the ship; and the share due the 'America' of moneys received on the Pacific side, to be paid over to said Brown, or his order, immediately on the arrival of the passengers in New York, by E. Mills, who guarantees, as agent aforesaid, the true and honest returns of all funds received by his agents on the Pacific. It is understood that this trip is to be made by the 'Uncle Sam' leaving San Francisco on or about the 15th October, and the 'America' New York on or about the 20th October next. Each ship is to pay all the expenses of her running and outfits, and to be responsible for her own acts in every respect. Each ship is to retain all the moneys received for local freight or passengers, that is, for such freight and passengers as only pay to the ports the individual ship runs to, without any division with the other ship. No commissions are to be charged anywhere on any receipts for the 'America' by said Mills in division; but the expense of advertising, and the amount paid out for runners at all points are to be borne by each ship in the same proportion as receipts are divided between them. In consideration of all the above, well and truly performed in good faith, Edward Mills, as agent for the steamship 'Yankee Blade,' hereby agrees that when the 'America' arrives at Panama, on her voyage hence to the Pacific Ocean, said ship 'Yankee Blade' shall leave New York at such time as to connect with the 'America,' conveying passengers and freight on the same terms as is hereinbefore agreed, say twenty-five per cent. to the 'Yankee Blade,' and seventy-five per cent. to the 'America;' provided only that said connection shall be made at a time that will not prevent the 'Yankee Blade' from making her connection with the 'Uncle Sam' at her regular time.    E. Mills, W. H. Brown."

To the libel exceptions were taken in the court below, which being sustained, the libel was dismissed [case unreported], and an appeal taken to this court.

Janes, Doyle & Barber, for libelant.

Crockett & Page, for claimant.

McALLISTER, Circuit Judge. This case comes before the court on an appeal from the decree of the district court of the United States for the Northern district of California, dismissing the libel upon exceptions taken to it. To the exception taken to the jurisdiction of the court, this inquiry will be limited.

For the past half-century, the extent of the admiralty jurisdiction of the courts of this country has been a fruitful source of controversy; and, though illumined as it has been by the genius of some of our ablest jurists, still remains a vexed question. In 1847, in Waring v. Clarke, 5 How. [46 U. S.] 441, the supreme court decided that in cases where admiralty jurisdiction depends on locality, it extends to all torts committed on the high seas, or within the ebb and flow of the tide as far up a river as the tide ebbs and flows, although the place be infra comitatus. Thus much for the jurisdiction of admiralty over torts. In the same year, in the case of New Jersey Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, that court decided that the courts of the United States had admiralty jurisdiction in personam and in rem over libels founded on contracts of affreightment to be executed on the sea, between the cities of New York and Providence. In 1849, in Cutler v. Rae, 7 How. [48 U. S.] 729, they declined to entertain a like jurisdiction in a cause of contribution, or general average, civil and maritime, and they say, "It is very much to be regretted that the jurisdiction of the courts of admiralty, in this country, is not more clearly defined. It has been repeatedly decided in this country, that its jurisdiction is not restricted to the subjects over which the English courts of admiralty exercised jurisdiction at the time our constitution was adopted." It is not necessary, for the purposes of this case, to enter the

---

[1] [Reported by Cutler McAllister, Esq.]
[2] [Affirmed in 19 How. (60 U. S.) 82.]

field of extended discussion into which our inquiry into the extent of admiralty jurisdiction over contracts would lead. If that jurisdiction be admitted to the extent contended for by its most zealous advocate, this case cannot come within its reach. Some twenty years after his elaborate exposition of the doctrine in the case of De Lovio v. Bolt [Case No. 3,776], Judge Story reasserted it in the case of The Volunteer [Id. 16,991]. The principle enunciated is, to use his own language, "that the admiralty had an original, ancient, and rightful jurisdiction over all maritime contracts strictly so called (that is, such contracts as respect business, trade, and navigation to, on, and over the high seas), which it might exert by a proceeding in rem in all cases where the maritime law establishes a lien or other right in rem, and by a proceeding in personam where no such lien or other right in rem existed." It follows from this, first, that all maritime contracts are within the jurisdiction of the admiralty courts; second, that there are only some of these contracts for the violation of which the admiralty jurisdiction can be exercised in rem; and, third, that those are such contracts to which the maritime law has annexed a lien. Admitting the contract sued on to be a maritime one, the inquiry is whether it belongs to that class of such contracts as have attached to them, by legal implication, a lien.

It is admitted by the proctor for libelant, that there is no case parallel in its details with the present; and this court is asked to extend the principles applicable to charter-parties, and make the lien which the law applies to those instruments, applicable to the case at bar. Before viewing the contract in its supposed analogy to a charter-party, let us consider it per se. It is a contract made by owners of vessels in a home port. This circumstance is worthy of consideration. The question is not whether an instrument known to the maritime law, and to which it has annexed a lien, is to be divested of that lien by the fact that such instrument was made by the owner instead of the master of the ship. The point is, whether there should be an implied lien in a contract, such as the one under consideration, made by the owners in the home port. In the case of The Draco [Id. 4,057], Judge Story, after deciding that a bottomry bond may be made by the owners of a vessel in a home or a foreign port, says, "Whether upon contracts so made in a home port a remedy lies in the admiralty in rem, is quite a different question." When so great an advocate of admiralty jurisdiction doubts, we certainly should pause. Again, in Blaine v. The Carter, 4 Cranch [8 U. S.] 328, 331, the court say, "In the case of a bottomry bond, executed by the owner in his own place of residence, the same reason does not exist for giving an implied admiralty claim upon the bottom (of the ship); for it is in his power to execute an express transfer or mortgage."

In view of foregoing reasoning, in relation to a marine instrument, well known to the laws of the sea, in deciding whether there is an implied lien annexed to the contract in dispute, and which is, sui generis, the fact, that there is no necessity for such implication, as it was in the power of the party to make an express hypothecation, is not to be overlooked. To create such lien it has been urged that the present contract is a charter-party, or if not, so analogous to it that the rule applicable to the one should be applied to the other.

A charter-party is the hiring of the whole or a part of a vessel, for the transportation of merchandise or passengers; and if it does not, ex vi termini, convey a proprietary interest, it certainly does pass a claim or interest in the vessel, recognized by the maritime law, the privilege to look upon her as answerable for the goods placed on board. That she is answerable for them, and they to her, is a well-settled and universal rule of law; and the parties, when they enter into the contract, are presumed to do so with knowledge of the lien implied by law from the terms and character of the instrument they make. The present agreement is a personal one, between the owners of vessels, to embark them in a common enterprise and divide the profits in the mode agreed upon; and includes a personal guarantee of one of the owners for a true and honest return of the moneys received by his vessel. If such agreement be a charter-party, then must every agreement between owners, where their vessels are to be used in carrying it out, be so considered; and the law, where no express lien has been created, must imply one. In charter-parties there is a mutuality of lien. The ship is answerable to the goods, and these again to the ship. They are joined together by the act of the law, and cannot be separated, save by the act of the parties, without the discharge of the respective liens. Here is perfect mutuality. The court can perceive none such in this case. The agreement is simply one of association; its object, to make a direct route through from New York to San Francisco, for the transportation of merchandise and passengers, the owners designing to combine the capacity of their two vessels to keep open a direct, uninterrupted communication between the two termini of the contemplated voyage. The court has been unable to find any case decided by the supreme court of the United States which has adjudicated that implied liens are annexed by the maritime law to associations made by owners of different vessels for purposes of trade. The case of Andrews v. Wall, 3 How. [44 U. S.] 568, is the only case which refers to these associations between the owners of vessels. But the question did not directly come before the court. Judge Story, arguendo, did say, "Over maritime contracts the admiralty possesses a clear and established jurisdiction, capable of being enforced in personam as well as in rem." As general as are

the terms here used by Judge Story, this court considers them as simply affirming the admiralty jurisdiction in personam over all maritime contracts. But, as before stated, the question was not directly before the court. Conkling, in his treatise, says of the case of Andrews v. Wall [supra], that it was not an original suit, but an intervention by third persons for their interest against funds in court. Had the enunciation, made by Judge Story, been understood in an unrestricted sense, and deemed the doctrine of the court, whence the expression of regret by the chief justice, four years later, "that it is very much to be regretted that the jurisdiction of the courts of admiralty in this country is not more clearly defined"? If the proposition advanced arguendo by Judge Story had been adopted by the court in its unrestricted sense, no clearer definition was needed. The jurisdiction of the admiralty would extend over all maritime contracts whatever, either by a proceeding in rem or in personam. The only question as to jurisdiction, when the former proceeding was taken, would be whether the res or its proceeds were within the reach of the court. This court knows no adjudication of the supreme court which has carried the doctrine to that extent, and it feels indisposed to adopt it in advance. The instrument sued on was made by the owners of the ships in the home port; there is no express hypothecation; there is no necessity for annexing to it an implied one; it is an instrument unknown to the maritime law; there is nothing in the transaction to raise an inference that the credit was not exclusively personal; and there is no decision of the supreme court affixing an implied lien to such a contract. The agreement, as has been said, is simply an association for the purposes of trade. In relation to an agreement of consortship, Mr. Conkling, in his treatise on Admiralty Jurisdiction, says, "There seem to be sufficient reasons for holding that no mutual liens arise from a contract of consortship, and, therefore, no suit in rem can be maintained for their enforcement." Volume 2 (2d Ed.) p. 517. Benedict states, "that vessels engaged in maritime employment, in which association increases efficiency or security, often agree to make common cause in their enterprise. Such agreements are agreements for consortship. They are maritime contracts, and are within the acknowledged jurisdiction of the admiralty of this country." (Section 298.) But he does not intimate that they are within that class of contracts referred to by Judge Story, in the case of The Volunteer [supra], to which there is annexed a lien by the maritime law, which can be enforced by a proceeding in rem. The analogy between the contract sued on and an agreement for consortship is slight; but it appears to the court stronger than that which exists between the former and a charter-party. In this case, the owners of the ships could, had they so chosen, have created an

express lien; the maritime law gives no implied one, and this court declines to construct one.

The exception to the jurisdiction is overruled, and the decree of the court below, dismissing the libel, is affirmed.

Affirmed in Vandewater v. Mills, 19 How. [60 U. S.] 82.